UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ANDRE PORTER, | ) | |
|---|---|---|
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 4:13-CV-2321 (CEJ) |
| | ) | |
| JAY CASSADY, | ) | |
| | ) | |
| Respondent. | ) | |

## **MEMORANDUM**

This matter is before the Court on the petition of Andre Porter for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### I. Procedural Background

Petitioner Andre Porter is presently incarcerated at the Missouri Eastern Correctional Center pursuant to the sentence and judgment of the Circuit Court of St. Louis County. On October 2, 2008, following a bench trial, petitioner was found guilty of two counts of second-degree robbery. Order and Verdict, Resp. Ex. A at 123. He was sentenced to concurrent 20-year terms of imprisonment. Judgment, Resp. Ex. A at 129-30. The Missouri Court of Appeals affirmed the judgment. State v. Porter, No. ED92518 (Mo. Ct. App. Dec. 15, 2009), Resp. Ex. G.

Petitioner timely filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, that was denied without a hearing. On August 14, 2012, the Missouri Court of Appeals affirmed the denial of post-conviction relief. Porter v. State, No. ED9711 (Mo. Ct. App. Aug. 14, 2012), Resp. Ex. L. On

November 14, 2013, petitioner timely filed this petition for relief pursuant to 28 U.S.C. § 2254.

## II. Factual Background

At 4:30 p.m., on October 12, 2007, Janet Watson was working as a teller at the UMB Bank in Ferguson, Missouri. A man later identified as petitioner approached her window and asked her for a money order. He then handed her a note that said, "Give me all your large bills, hundreds, fifties, twenties in your top and bottom drawer." Trial Trans. at 27-28, Resp. Ex. B. As Ms. Watson began to remove cash from her top drawer, her co-worker Jada Huffman approached. Ms. Watson signaled to her that she was being robbed. Ms. Huffman read the note and walked away to press the alarm and call the branch manager. Id. at 49. Ms. Watson handed petitioner the money she had removed from her top drawer and petitioner said, "Give me more. I know you have more, and hurry up." Id. at 41. She took three or four more stacks of money from her second drawer and handed it to him. Petitioner wrapped the money in the note, put it in his pocket, and walked out. Id. at 29. Ms. Watson testified that she did not see a weapon but she was primarily focused on the note and could not see petitioner's hands at all times. She felt threatened and scared by petitioner. Id. at 30.

Jamie Francis was a teller at the US Bank in Ferguson, Missouri. At 1:45 on October 16, 2007, petitioner approached her window and placed a note on her counter that said, "Give me all the hundreds and fifties out of the top two drawers. Now hurry." Ms. Francis described plaintiff as having a very stern look on his face. She opened the drawer and began putting money on the counter. She testified that she did not have much money in her drawer but she could see that petitioner was

dissatisfied and so she started to give him twenty-dollar bills. When she hesitated, he said "Now." He picked up his note and the money and left the bank. Id. at 67-68. Ms. Francis did not see a weapon but testified that the look petitioner gave her frightened her and she "just did as he asked to get him out of the bank." Id. at 70.

Joyce Adail was with petitioner when he was arrested on October 18, 2007. She previously dated petitioner and ran into him at a liquor store earlier in the evening. She described him as uncharacteristically friendly and generous, buying her liquor for her. They went together to the home of Ms. Adail's brother, where petitioner gave cash to several people. According to Ms. Adail, this was unusual behavior for him. Id. at 97-100.

Additional facts will be provided as necessary to address petitioner's claims.

### III. Legal Standard

When a claim has been adjudicated on the merits in state court proceedings, habeas relief is permissible under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), only if the state court's determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d)(1)-(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 544 U.S.

3

133, 141 (2005). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." Id.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Payton, 125 S. Ct. at 1439; Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 406. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410-11).

To preserve a claim for relief, "a habeas petitioner must have raised both the factual and legal bases" of his claim to the state court, and afforded that court a fair opportunity to review its merits. Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006) (citations omitted). Where a claim is defaulted, a federal habeas court will consider it only if the petitioner can establish either cause for the default and actual prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice. Id.

## IV. Discussion

Respondent asserts that petitioner failed to properly preserve the claims presented in grounds 3 through 6, and 8. Because the claims are clearly unavailing, the Court will address the merits of the claims despite any procedural default. See Nance v. Norris, 392 F.3d 284, 291 (8th Cir. 2004) (allowing federal habeas courts to bypass a procedural default issue and proceed to the merits when relief is denied).

### Ground 1: Speedy Trial

Petitioner was arrested on October 18, 2007, and was charged by criminal complaint on October 19, 2007. On November 13, 2007, petitioner filed a *pro se* motion requesting a speedy trial, invoking "if necessary," the Uniform Mandatory Disposition of Detainer Law. Resp. Ex. A at 14. The prosecutor informed the court that petitioner was not entitled to relief under the detainer law because he was not being held in the Missouri Department of Corrections. E-mail, Resp. Ex. A at 15; see also Trans. at 18.

Trial was scheduled for June 9, 2008. On May 7, 2008, petitioner filed a *pro se* motion to dismiss for violation of his statutory and constitutional rights to a speedy trial and, on June 2, 2008, he filed a motion for a speedy trial. On June 9, 2008, the trial was continued to July 14, 2008. Petitioner filed another motion to dismiss for violation of his speedy trial rights. On July 14, 2008, trial was reset for September 29, 2008. Petitioner filed yet another motion to dismiss on August 27, 2008.

On September 29, 2008, the trial court conducted a hearing on petitioner's motions to dismiss. The court noted that the prior trial settings were continued

because of the court's schedule or the presence of older criminal cases. Trans. at 18. The court took petitioner's dismissal motion under advisement. Defense counsel then moved to continue the trial to conduct unspecified further investigation. See Trans. at 18-19 (Q: "[C]an you demonstrate any prejudice the defendant will suffer if I don't grant your motion for continuance?" A: "Your Honor, no specific prejudice. We just ask the Court for additional time.") The court denied the continuance motion and the case proceeded to trial. On October 2, 2008, the court announced its finding of guilt and denied the motion to dismiss. Trans. at 122.

On appeal, the Missouri Court of Appeals evaluated petitioner's speedy-trial claim under the four-factor balancing test set forth in Barker v. Wingo, 407 U.S. 514 (1972): (1) the length of the delay; (2) the reasons for the delay; (3) defendant's assertion of the right to a speedy trial; and (4) prejudice to the defendant. State v. Porter, Resp. Ex. G at 10-13.

With respect to the first factor, the appellate court found that, in light of the relatively uncomplicated charges against petitioner, the delay of 11.5 months was presumptively prejudicial but was "not so lengthy as to automatically weigh heavily against the state or amount to prejudice *per se*." Id. at 11 (quoting State v. Black, 587 S.W.2d 865, 867 (Mo. Ct. App. 1979)); *cf.* Barker 407 U.S. at 533-34 (finding no speedy-trial violation despite "extraordinary" delay of five years).

With respect to the reason for the delay, the appellate court noted that the justification for the delay determines the amount of weight against the State. As stated in Barker,

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate

> responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

Id. at 531. In this case, none of the continuances were the result of a request from the prosecutor but were caused by the court's crowded docket. Thus, the Court of Appeals determined that the second factor weighed against the State, although not heavily. State v. Porter, at 11-12.

The third factor — the defendant's assertion of the right to a speedy trial — "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Barker, 407 U.S. at 531-32. Here, as the appellate court noted, petitioner repeatedly asserted his right to a speedy trial and thus the third factor weighed in his favor and against the State. State v. Porter, at 12.

The fourth factor is prejudice to the defendant. The courts assess prejudice in light of the interests that the right was designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. Barker, 407 U.S. at 532. Impairment to the defense is the most serious, because a defendant's inability to adequately prepare his case "skews the fairness of the entire system." Id. On appeal, petitioner argued that his pretrial incarceration was oppressive because he was unable to work, spend time with his family and friends, and was forced to spend "dead time" in jail. Appellant's Brief at 33, Resp. Ex. D. He did not argue that his defense was impaired by the delay and, indeed, sought a continuance on the day of trial. The appellate court found that, while the delay was presumptively prejudicial, the presumption was overcome by the other Barker factors. State v. Porter, at 13.

The decision of the state courts was not contrary to, or an unreasonable application of, clearly established federal law; nor was the decision based on an unreasonable determination of the facts. Petitioner's first ground for relief is without merit.

### Ground 2: Sufficiency of Evidence

Petitioner asserts the second-degree robbery convictions cannot be sustained because there was no evidence that he used or threatened the immediate use of physical force to get the tellers to comply with his demands.

In reviewing the sufficiency of the evidence to support a criminal conviction, the court asks whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). In applying this standard, the scope of review "is extremely limited. . . . We must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and we must defer to that resolution." Whitehead v. Dormire, 340 F.3d 532, 536 (8th Cir. 2003) (citations omitted). "[I]t is the responsibility of the jury — not the court — to decide what conclusions should be drawn from evidence admitted at trial." On habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) (citations omitted).

Under Missouri law, a person commits the crime of second-degree robbery when he "forcibly steals property". Mo.Rev.Stat. § 569.030. A person "forcibly steals" when,

> in the course of stealing . . . he uses or threatens the immediate use of physical force upon another person for the purpose of:
>
> (a) Preventing or overcoming resistance to the taking of the property . . . ; or
>
> (b) Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft.

Mo.Rev.Stat. § 569.010.

"[T]he force necessary to constitute robbery may be constructive as well as actual, and may consist in the intimidation of the victim, or putting him in fear." State v. Duggar, 710 S.W.2d 921, 922 (Mo. Ct. App. 1986). "The threat of physical harm need not be explicit; it can be implied by the defendant's words, behavior, or both." State v. Lybarger, 165 S.W.3d 180, 187 (Mo. Ct. App. 2005).

Ms. Watson testified that petitioner never touched her or raised his hand toward her and she never saw a weapon. Trans. at 40-41. However, she was not sure where his hands were at all times throughout the encounter because she was focused on the demand note. She did recall that, when she put the first stack of money on the counter, he told her to "hurry up. I know you have more," and "moved his hands back." Id. at 41. She did not know whether he put his hands in his pockets at that time. Id. She felt threatened and afraid throughout the encounter. Ms. Francis similarly testified that she did not see petitioner with a weapon but she did not know where his hands were. She also testified that she

9

thought "he meant business" because he had a very serious look on his face and she was afraid. Id. at 70.

Based on this evidence, the Court of Appeals determined that petitioner's actions during the two robberies "contained an implied threat to use physical force to compel" the tellers to relinquish money from the cash drawers. State v. Porter, at 8-9. This decision is not objectively unreasonable and petitioner is not entitled to habeas relief on his second ground.

### Ground 3: Deficient Probable Cause Affidavit

On October 19, 2007, the State issued a two-count complaint supported by a "probable cause statement" that incorrectly stated that Jamie Francis had identified him in a live line-up. Resp. Ex. A at 12-13. In fact, Ms. Francis identified another individual at the line-up. She selected petitioner from a photo array, but this occurred after the probable cause statement was signed. Motion to Dismiss, Resp. Ex. A at 109-10.

Petitioner cannot obtain habeas corpus relief on this claim. On November 14, 2007, a grand jury issued an indictment. Because the evidence at trial supported the charges on which petitioner was convicted, any errors in the complaint did not taint his conviction. See Aflic v. New York, No. 01 CIV. 6152 (JSM), 2002 WL 500373, at *2 (S.D.N.Y. Apr. 3, 2002) (denying habeas corpus claim based on false statement in complaint).

### Ground 4: Violations of *Brady v. Maryland*

Petitioner alleges that the State withheld exculpatory information in violation of Brady v. Maryland, 373 U.S. 83 (1963). Under Brady, the prosecution has a duty to disclose material evidence favorable to the defense. Id. at 87. Failure to do so

constitutes a violation of due process. Id. Evidence favorable to the accused is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Liggins v. Burger, 422 F.3d 642, 651-52 (8th Cir. 2005) (quotations omitted).

As stated above, Ms. Francis identified another person in the line-up as the man who had robbed her. She later selected petitioner from a photo array and completed a witness statement. See Klenke Supp. Rept., Doc. 14 at 40-41 (Ms. Francis "circled, dated, and signed photo [of petitioner] and completed a witness statement affirming the above.") Petitioner asserts that the State suppressed both the written statement made by ms. Francis and supplemental police reports completed by Officers Klenke and Ballard regarding the identification procedures.

Petitioner cannot establish that the undisclosed documents are material. The prosecutor introduced the marked photo array during trial and Ms. Francis testified as to its authenticity. Trans. at 74. With respect to the supplemental police reports, defense counsel conducted extensive cross examination of Ms. Francis and Officer Klenke regarding the identification processes. Trans. at 76-85; Supp. Trans. at 57-63, Resp. Ex. C. The documents were merely cumulative of the evidence presented at trial and thus were not material.

Petitioner also claims the State withheld impeachment evidence. The Brady rule applies to evidence which impeaches the credibility of a government witness, whether or not the accused has specifically requested the information. Evenstad v. Carlson, 470 F.3d 777, 784 (8th Cir. 2006) (citations omitted). In determining the materiality of impeachment evidence, the court considers both the strength of the evidence at issue and the importance of the witness in establishing the defendant's

11

guilt. Id. Petitioner claims that the State withheld evidence of Joyce Adail's prior criminal convictions. Ms. Adail testified at trial that she had previously been convicted of manslaughter; petitioner has not identified any other prior convictions that should have been disclosed. Assuming for the sake of argument that other prior convictions exist, in light of the evidence as a whole, there is no likelihood that their disclosure would have altered the outcome of trial. Petitioner also argues that the police originally suspected Ms. Adail of participating in the robberies and that the State failed to disclose a deal it offered her in exchange for her testimony against him. Ms. Adail was not charged in connection with this case and there is no evidence of a cooperation deal. Petitioner's fourth ground for relief will be denied.

## **Ground 5: Suggestive Identification Procedures**

Petitioner argues that pretrial identification procedures were impermissibly suggestive and tainted the in-court identifications. He asserts that the trial court's failure to exclude the witness identifications violated his rights to due process.

A live lineup was conducted on October 18, 2007. Janet Watson and Jada Huffman separately identified petitioner as the person who robbed the UMB Bank. Jamie Francis identified another individual as the person who committed the US Bank robbery. As discussed above, Ms. Francis later identified petitioner from a photo array. All three witnesses gave in-court identifications of petitioner.

"A conviction based on eyewitness identification at trial will be set aside only when pre-trial identification procedures were so impermissibly suggestive that they give rise to a very substantial likelihood of irreparable harm." Trevino v. Dahm, 2 F.3d 829, 833 (8th Cir. 1993); accord Palmer v. Clarke, 408 F.3d 423, 435 (8th Cir. 2005) (applying standard to photographic lineup procedure). "Reliability is the

12

linchpin in determining the admissibility of identification testimony." Manson v. Brathwaite, 432 U.S. 98, 114 (1977). Even if pretrial identification procedures are suggestive or inappropriate, "[t]he central question is whether, under the totality of the circumstances, the identification was reliable" despite such pretrial procedures. Trevino, 2 F.3d at 833.

Here, any argument that the witness identifications of petitioner were unreliable is undermined by the testimony of Joyce Adail, who had once dated petitioner and identified him from a still photograph taken from the US Bank surveillance videotape. Furthermore, as discussed below, photographs from the surveillance videotapes were admitted at trial and viewed by the court.

Petitioner's fifth ground for relief will be denied.

### Sixth Ground: Trial Court Relied on Videotapes Not in Evidence

At trial, the prosecutor introduced photographs taken from the bank surveillance tapes, but not the tapes themselves. At sentencing, the judge stated, "I saw the videotapes and I did find beyond a reasonable doubt that you were responsible for these two robberies." Sent. Trans. at 129, Resp. Ex. B. Petitioner claims that this statement establishes that his conviction was based on evidence not presented at trial. This claim was unavailing: during post-conviction proceedings, the judge clarified that what she viewed at trial were the photographs taken from the surveillance videotapes. Order, Resp. Ex. I at 90 ("The Court did not view a videotape or anything not admitted into evidence.") Petitioner's sixth ground for relief will be denied.

### Ground 7: Ineffective Assistance of Post-Conviction Counsel

Petitioner contends that post-conviction relief counsel rendered ineffective assistance of counsel by failing to include all his *pro se* claims in the amended Rule 29.15 motion. "There is no constitutional right to an attorney in state post-conviction proceedings." Coleman v. Thompson, 501 U.S. 722, 752 (1991) holding modified by Martinez v. Ryan, 132 S. Ct. 1309 (2012). "Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." Id. The Supreme Court has held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Martinez, 132 S. Ct. 1309, 1315 (2012). However, the holding of Martinez does not create an independent claim for relief based on ineffective assistance of post-conviction counsel. Petitioner's seventh ground will be denied.

### Ground 8: Post-Conviction Court Error

The post-conviction court entered findings of fact and conclusions of law on the claims included in petitioner's amended Rule 29.15 motion. Resp. Ex. I at 85-92. Petitioner asserts that the court violated his due process rights by failing to address the claims he presented in his *pro se* Rule 29.15 motion. The post-conviction court had no obligation to address claims beyond those presented in the amended motion. Petitioner's eighth ground for relief will be denied.

### IV. Conclusion

For the reasons discussed above, the Court concludes that petitioner has failed to establish that he is entitled to relief based on state court proceedings that were contrary to, or an unreasonable application of, clearly established federal law, or based upon an unreasonable determination of the

facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Because petitioner has failed to make a substantial showing of the denial of a constitutional right. The Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997).

                                                        _____
                                                        CAROL E. JACKSON
                                                        UNITED STATES DISTRICT JUDGE

Dated this 13th day of March, 2017.